UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MARCELINO CALDERON-SILVA,

Petitioner,

v.

K. HOLLEN, Warden,

Respondent.

No. 2: 14-cv-0052 GEB DAD P

FINDINGS AND RECOMMENDATIONS

Petitioner is a state prisoner proceeding without counsel with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a judgment of conviction entered against him on November 18, 2011, in the Sacramento County Superior Court, on charges of assault with a deadly weapon by a life prisoner and possession of a sharp instrument by an inmate.  Petitioner seeks federal habeas relief on the following grounds:  (1) jury instruction error violated his right to due process; (2) the trial court abused its discretion in failing to strike one of his prior "strike" convictions in the furtherance of justice at the time of his sentencing; (3) the trial court violated his right to due process when it agreed to have him shackled during his trial; (4) his trial counsel rendered ineffective assistance; (5) the evidence introduced at his trial is insufficient to support his convictions; and (6) prosecutorial misconduct violated his right to due process.  Upon careful consideration of the record and the applicable law, the undersigned recommends that petitioner's application for habeas corpus relief be denied.

## I. Background

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

> Defendant Marcelino Silva, an inmate at Folsom State Prison serving a life term for murder, slashed a fellow inmate with a razor blade. A jury convicted defendant of assault with a deadly weapon with malice aforethought by a life prisoner (Pen. Code,[1] § 4500) and possession of a sharp instrument by an inmate (§ 4502). The trial court found true allegations that defendant had suffered two prior strike convictions (§667, subds.(b)-(i); 1170.12) and sentenced him to 27 years to life in prison. He appealed.
>
> On appeal, defendant claims instructional error and that the trial court abused its discretion in failing to strike one of his strikes. Finding no error, we shall affirm.
>
> **FACTS**
>
> Correctional Officer Randy Wahl was on duty in the yard at Folsom State Prison when he saw a fight in the "alley" between two buildings. He called in an alarm over the radio. He ran toward the alley and ordered all inmates down. Defendant was running. Wahl stopped defendant, handcuffed him, and made a cursory search, but found no contraband. There appeared to be a blood stain on defendant's shirt and a cut on his right index finger.
>
> Officers responding to the alarm saw another inmate, Saustegui, on the ground bleeding from his face. Saustegui had open wound lacerations to the left side of his neck and his left cheek bone. His wounds required stitches. A razor blade from a disposable razor was found in the yard with wet blood on it.
>
> A security camera recorded the incident; the recording was played for the jury at trial.

People v. Silva, No. C069793, 2012 WL 5077925 at *1 (Cal.App.3d Dist., Oct. 19, 2012).

After the California Court of Appeal affirmed petitioner's judgment of conviction, he filed a petition for review in the California Supreme Court. (Resp't's Lod. Doc. 8.) The California Supreme Court denied that petition "without prejudice to any relief to which defendant might be entitled after this court decides People v. Vargas, S203744." (Resp't's Lod. Doc. 9.)

/////

---

[1]  Further undesignated statutory references are to the Penal Code.

1   Subsequently, petitioner filed a petition for writ of habeas corpus in the Sacramento

2   County Superior Court.  (Resp't's Lod. Doc. 10.)  That court denied the petition on procedural

3   grounds and on the merits of petitioner's claims.  (Resp't's Lod. Doc. 11.)  Petitioner

4   subsequently filed a petition for writ of habeas corpus in the California Court of Appeal for the

5   Third Appellate District.  (Resp't's Lod. Doc. 12.)  That petition was denied with the court citing

6   the decisions in In re Steele, 32 Cal.4th 682, 692 (2004) and In re Hillery, 202 Cal.App.2d 293

7   (1962), as well as Rule 4.551(a) of the California Rules of Court.  (Resp't's Lod. Doc. 13.)

8   Petitioner then filed a petition for writ of habeas corpus in the California Supreme Court.

9   (Resp't's Lod. Doc. 14.)  That petition was also denied "without  prejudice to any relief to which

10  defendant might be entitled after this court decides People v. Vargas, S203744."  (Resp't's Lod.

11  Doc. 15.)

12   Petitioner filed his federal habeas petition in this court on January 9, 2014.  (ECF No. 1.)

13  Respondent filed an answer on October 10, 2014, and petitioner filed a traverse on January 8,

14  2015.  (ECF Nos. 17, 25.)

15  **II.  Standards of Review Applicable to Habeas Corpus Claims**

16   An application for a writ of habeas corpus by a person in custody under a judgment of a

17  state court can be granted only for violations of the Constitution or laws of the United States.  28

18  U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or

19  application of state law.  See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire,

20  502U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

21   Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas

22  corpus relief:

23   An application for a writ of habeas corpus on behalf of a
    person in custody pursuant to the judgment of a State court shall not
24  be granted with respect to any claim that was adjudicated on the
    merits in State court proceedings unless the adjudication of the
25  claim -

26   (1) resulted in a decision that was contrary to, or involved
    an unreasonable application of, clearly established Federal law, as
27  determined by the Supreme Court of the United States; or

28  /////

3

1

(2) resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in the
State court proceeding.

2

3     For purposes of applying § 2254(d)(1), clearly established federal law consists of holdings

4     of the United States Supreme Court at the time of the last reasoned state court decision. Greene

5     v. Fisher, ___ U.S. ___, ___, 132 S. Ct. 38, 44 (2011); Stanley v. Cullen, 633 F.3d 852, 859 (9th

6     Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). Circuit court precedent

7     "may be persuasive in determining what law is clearly established and whether a state court

8     applied that law unreasonably." Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561,

9     567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general

10    principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has

11    not announced." Marshall v. Rodgers, ___ U.S. ___, ___, 133 S. Ct. 1446, 1450 (2013) (citing

12    Parker v. Matthews, ___ U.S. ___, ___, 132 S. Ct. 2148, 2155 (2012)). Nor may it be used to

13    "determine whether a particular rule of law is so widely accepted among the Federal Circuits that

14    it would, if presented to th[e] [Supreme] Court, be accepted as correct. Id. Further, where courts

15    of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly

16    established Federal law" governing that issue. Carey v. Musladin, 549 U.S. 70, 77 (2006).

17    A state court decision is "contrary to" clearly established federal law if it applies a rule

18    contradicting a holding of the Supreme Court or reaches a result different from Supreme Court

19    precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003).

20    Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the

21    writ if the state court identifies the correct governing legal principle from the Supreme Court's

22    decisions, but unreasonably applies that principle to the facts of the prisoner's case.[2] Lockyer v.

23    Andrade, 538 U.S. 63, 75 (2003); Williams, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002

24    (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ simply because that

25    court concludes in its independent judgment that the relevant state-court decision applied clearly

26    _____

27    [2]   Under § 2254(d)(2), a state court decision based on a factual determination is not to be
      overturned on factual grounds unless it is "objectively unreasonable in light of the evidence
      presented in the state court proceeding." Stanley, 633 F.3d at 859 (quoting Davis v. Woodford,

28    384 F.3d 628, 638 (9th Cir. 2004)).

1   established federal law erroneously or incorrectly.  Rather, that application must also be

2   unreasonable."  Williams, 529 U.S. at 412.  See also Schriro v. Landrigan, 550 U.S. 465, 473

3   (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent

4   review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'").

5   "A state court's determination that a claim lacks merit precludes federal habeas relief so long as

6   'fairminded jurists could disagree' on the correctness of the state court's decision."  Harrington v.

7   Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

8   Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner

9   must show that the state court's ruling on the claim being presented in federal court was so

10  lacking in justification that there was an error well understood and comprehended in existing law

11  beyond any possibility for fairminded disagreement."  Richter, 562 U.S. at 103.

12      If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

13  court must conduct a de novo review of a habeas petitioner's claims.  Delgadillo v. Woodford,

14  527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008)

15  (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of §

16  2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering

17  de novo the constitutional issues raised.").

18      The court looks to the last reasoned state court decision as the basis for the state court

19  judgment.  Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).

20  If the last reasoned state court decision adopts or substantially incorporates the reasoning from a

21  previous state court decision, this court may consider both decisions to ascertain the reasoning of

22  the last decision.  Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  "When a

23  federal claim has been presented to a state court and the state court has denied relief, it may be

24  presumed that the state court adjudicated the claim on the merits in the absence of any indication

25  or state-law procedural principles to the contrary."  Richter, 562 U.S. at 99.  This presumption

26  may be overcome by a showing "there is reason to think some other explanation for the state

27  court's decision is more likely."  Id. at 785 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803

28  (1991)).  Similarly, when a state court decision on a petitioner's claims rejects some claims but

1   does not expressly address a federal claim, a federal habeas court must presume, subject to

2   rebuttal, that the federal claim was adjudicated on the merits.  Johnson v. Williams, ___ U.S. ___,

3   ___, 133 S. Ct. 1088, 1091 (2013).

4       Where the state court reaches a decision on the merits but provides no reasoning to

5   support its conclusion, a federal habeas court independently reviews the record to determine

6   whether habeas corpus relief is available under § 2254(d).  Stanley, 633 F.3d at 860; Himes v.

7   Thompson, 336 F.3d 848, 853 (9th Cir. 2003).   "Independent review of the record is not de novo

8   review of the constitutional issue, but rather, the only method by which we can determine whether

9   a silent state court decision is objectively unreasonable."  Himes, 336 F.3d at 853.  Where no

10  reasoned decision is available, the habeas petitioner still has the burden of "showing there was no

11  reasonable basis for the state court to deny relief."  Richter, 562 U.S. at 98.

12      A summary denial is presumed to be a denial on the merits of the petitioner's claims.

13  Stancle v. Clay, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012).  While the federal court cannot analyze

14  just what the state court did when it issued a summary denial, the federal court must review the

15  state court record to determine whether there was any "reasonable basis for the state court to deny

16  relief."  Richter, 562 U.S. at 98.  This court "must determine what arguments or theories ... could

17  have supported, the state court's decision; and then it must ask whether it is possible fairminded

18  jurists could disagree that those arguments or theories are inconsistent with the holding in a prior

19  decision of [the Supreme] Court."  Id. at 102.  The petitioner bears "the burden to demonstrate

20  that 'there was no reasonable basis for the state court to deny relief.'"  Walker v. Martel, 709 F.3d

21  925, 939 (9th Cir. 2013) (quoting Richter, 562 U.S. at 98).

22      When it is clear, however, that a state court has not reached the merits of a petitioner's

23  claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal

24  habeas court must review the claim de novo.  Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462

25  F.3d 1099, 1109 (9th Cir. 2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

26  /////

27  /////

28  /////

**III. Petitioner's Claims**

    **A. Jury Instruction Error**

       In his first claim for federal habeas relief, petitioner argues that jury instruction error at his trial violated his federal constitutional rights.  (ECF No. 1 at 4.)[3]  Although petitioner does not elaborate on this claim in his habeas petition, he has clarified in his traverse that he is raising the same jury instruction claim that he raised on direct appeal.  (ECF No. 25 at 10-13.)  On appeal, petitioner argued that the trial court erred in instructing the jury at his trial on implied malice. (Resp't's Lod. Doc. 4 at 4-11.)  The California Court of Appeal rejected that argument on state law grounds, reasoning as follows:

> Defendant contends it was error for the trial court to instruct the jury on implied malice.  He argues the specific intent requirement of section 4500 cannot be satisfied by implied malice.  He asserts section 4500 "in effect, it is a murder/attempted murder statute." He contends a violation of section 4500 where the victim does not die, like attempted murder, requires a specific intent to kill, a mental state inconsistent with implied malice.
>
> We are not persuaded by defendant's attempt to analogize his assault charge to murder and attempted murder charges.  Section 4500 is an assault statute, not a murder statute.  (See People v. McNabb (1935) 3 Cal.2d 441, 458 [explaining that the predecessor statute "was enacted as a disciplinary regulation and as a means of protection to prisoners themselves against the assaults of the vicious, and also to protect the officers who are required to mingle with the inmates, unarmed"].)  It proscribes "assault upon the person of another with a deadly weapon or instrument, or by any means of force likely to produce great bodily injury," when committed by a life-term inmate with malice aforethought.  It does not require intent to kill.  The subsequent death of the victim (within a year and a day) is relevant only in determining the penalty.  If the victim dies, the punishment is death or life imprisonment without the possibility of parole; if the victim does not die, the punishment is life without the possibility of parole for nine years.  (§ 4500.)
>
> The assault offense defined in section 4500 requires the specific intent of malice aforethought.  (People v. Jeter (2005) 125 Cal.App.4th 1212, 1217 (Jeter).)  "The words malice aforethought in section 4500 have the same meaning as in sections 187 and 188. [Citations.]  Thus the rules that have evolved regarding malice aforethought as an element in a charge of murder apply to section 4500."  (People v. Chacon (1968) 69 Cal.2d 765, 781 (Chacon),

---

[3]  Page number citations such as this one are to the page numbers reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

disapproved on another ground in People v. Doolin (2009) 45 Cal.4th 390, 421, fn.22.)  "Malice, for the purpose of defining murder, may be express or implied."  (People v. Nieto Benitez (1992) 4 Cal.4th 91, 102.)

Under section 188, which defines malice aforethought for purposes of the murder statute, express malice is present "when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature."  Malice is implied "when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart." (§ 188.)  "The statutory definition of implied malice has never proved of much assistance in defining the concept in concrete terms."  (People v. Dellinger (1989) 49 Cal.3d 1212, 1217.)  Our high court has "interpreted implied malice as having 'both a physical and a mental component.  The physical component is satisfied by the performance of "an act, the natural consequences of which are dangerous to life." [Citation.]  The mental component is the requirement that the defendant "knows that his conduct endangers the life of another and . . . acts with a conscious disregard for life." [Citation.]' [Citation.]"  (People v. Chun (2009) 45 Cal.4th 1172, 1181 (Chun).)

"Malice aforethought as used in section 4500 has the same meaning as it has for murder convictions, requiring either an intent to kill or 'knowledge of the danger to, and with conscious disregard for, human life.' [Citations.]"  (Jeter, supra, 125 Cal.App.4th at p. 1216.)  Here, the trial court instructed the jury in a manner consistent with this meaning - that a violation of section 4500 required a specific intent and the specific intent required would be explained in the instruction for that crime.  The jury was then instructed in the language of CALCRIM No. 2720, that defendant had been charged with "assault with a deadly weapon with malice aforethought, while serving a life sentence in violation of Penal Code section 4500."  The instruction set out the elements of the offense, including that "the defendant acted with malice aforethought."  It then defined malice aforethought:

"There are two kinds of malice aforethought, express malice and implied malice.  Proof of either is sufficient to establish the state of mind required for this crime. [¶]  The defendant acted with express malice if he unlawfully intended to kill the person assaulted. [¶] The defendant acted with implied malice if, one, he intentionally committed an act; two, the natural consequences of the act were dangerous to human life; three, at the time he acted, he knew his acts were dangerous to human life; and four, he deliberately acted with conscious disregard for human life."

This definition of malice aforethought is the same as that required for murder.  (See Chun, supra, 45 Cal.4th at p. 1181; CALCRIM No. 520.)  Thus, in accordance with Chacon, supra, the trial court defined malice aforethought for purposes of section 4500 using the same definition applicable in murder cases.  The inclusion of a definition of implied malice was proper; the trial court correctly instructed the jury.

8

1    Silva, 2012 WL 5077925 at **1-3.

2          In general, a challenge to jury instructions does not state a cognizable federal

3    constitutional claim.  McGuire, 502 U.S. at 72; Engle v. Isaac, 456 U.S. 107, 119 (1982);

4    Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983).  In order to warrant federal habeas

5    relief, a challenged jury instruction "cannot be merely 'undesirable, erroneous, or even

6    "universally condemned,"' but must violate some due process right guaranteed by the fourteenth

7    amendment."  Cupp v. Naughten, 414 U.S. 141, 146 (1973).  The appropriate inquiry when such a

8    challenge is made in a federal habeas proceeding "is whether the ailing instruction . . . so infected

9    the entire trial that the resulting conviction violates due process."  Dixon v. Williams, 750 F.3d

10   1027, 1032 (9th Cir. 2014) (citations omitted).  In making its determination, this court must

11   evaluate the challenged jury instructions "in the context of the overall charge."  Id. (quoting

12   Boyde v. California, 494 U.S. 370, 378 (1990)).  "[N]ot every ambiguity, inconsistency, or

13   deficiency in a jury instruction rises to the level of a due process violation."  Middleton v.

14   McNeil, 541 U.S. 433, 437 (2004).

15         Petitioner has failed to demonstrate that the decision of the California Court of Appeal

16   rejecting his jury instruction claim was contrary to or an unreasonable application of federal law

17   under the authorities cited above.  This court is bound by the conclusion of the Court of Appeal

18   that the jury instructions given at petitioner's trial on the specific intent requirement of California

19   Penal Code § 4500 were sufficient to satisfy the requirements of California law.  Bradshaw v.

20   Richey, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of

21   state law, including one announced on direct appeal of the challenged conviction, binds a federal

22   court sitting in habeas corpus."); see also Matthews v, Holland, No.1:13-cv-0427 LJO MJS (HC),

23   2014 WL 5485712, at *19 (E.D. Cal. Oct. 29, 2014) (Concluding, in denying federal habeas

24   relief, that California Penal Code § 4500 is a general intent crime and that its element of malice

25   aforethought can be proven by either express or implied malice.)

26         Further, after a review of the record and the instructions given to petitioner's jury as a

27   whole, the undersigned also concludes that the giving of a jury instruction on implied malice did

28   not render petitioner's trial fundamentally unfair or otherwise violate the federal due process

clause.  Accordingly, petitioner is not entitled to federal habeas relief with respect to this claim of instructional error.

**B. <u>Romero</u> Motion**

In his second claim for federal habeas relief, petitioner argues that at the time of his sentencing the trial court abused its discretion in denying his motion to strike one of his prior "strike" convictions, pursuant to the decision in <u>People v. Superior Court (Romero)</u>, 13 Cal.4th 497.  (ECF No. 1 at 4; ECF No. 25 at 13-21.)  Petitioner contends that the sentencing judge's decision in this regard was based on "false facts" regarding his previous convictions.  (<u>Id.</u>)

Petitioner raised this claim on direct appeal.  The California Court of Appeal rejected petitioner's argument, reasoning as follows:

> Defendant contends the trial court abused its discretion in refusing to strike one of defendant's prior strikes.  While conceding a "significant" criminal history, defendant contends he is not within the spirit of the three strikes law.  Defendant notes his two strikes - for murder and attempted murder - arose from a single incident, where he fired multiple times into a car containing boisterous men, killing one.  He also argues a two-strike sentence of 18 years to life would be ample punishment for his crime.

> In the furtherance of justice, a trial court may strike or dismiss a prior conviction allegation.  (§ 1385, subd. (a); <u>People v. Superior Court (Romero)</u> (1996) 13 Cal.4th 497.)  "[I]n ruling whether to strike or vacate a prior serious and/or violent felony conviction allegation or finding under the Three Strikes law, on its own motion, 'in furtherance of justice' pursuant to Penal Code section 1385(a), or in reviewing such a ruling, the court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (<u>People v. Williams</u> (1998) 17 Cal.4th 148, 161.)

> A trial court's refusal to strike a prior conviction allegation is reviewed under the deferential abuse of discretion standard.  (<u>People v. Carmony</u> (2004) 33 Cal.4th 367, 375 (<u>Carmony</u>).)  "[T]he three strikes law not only establishes a sentencing norm, it carefully circumscribes the trial court's power to depart from this norm and requires the court to explicitly justify its decision to do so.  In doing so, the law creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper."  (<u>Carmony</u>, <u>supra</u>, 33 Cal.4th at p. 378.)  Here, we find no abuse of discretion.

1

2

3

4

5

6

7

8

9

That defendant's two strikes arose from the same brief crime spree does not require striking one of them.  In People v. Benson (1998) 18 Cal.4th 24, 36, at footnote 8, our Supreme Court suggested there might be "circumstances in which two prior felony convictions are so closely connected - for example, when multiple convictions arise out of a single act by the defendant as distinguished from multiple acts committed in an indivisible course of conduct - that a trial court would abuse its discretion under section 1385 if it failed to strike one of the priors."  Here, defendant's two strikes did not arise from a single act; he fired a gun at least eight times, stopping to reload, at two men that he perceived had "talked back" to him, firing until one victim was dead and the other had escaped by crawling out of the other side of the car he was sitting in.  Defendant's conduct constituted multiple acts of violence, properly resulting in multiple counts of conviction, properly resulting in two strikes.[4]

10

11

12

13

14

As defendant acknowledges, the trial court "conscientiously considered and ruled on" defendant's Romero motion.  The court considered that defendant's prior convictions all involved violence.  In 1991, he repeatedly fired his gun into a car, committing murder.  He had suffered two misdemeanor convictions for spousal abuse and battery.  While in prison, he had several serious rule violations.  His potential for violence was such as to require shackling at trial.  His current conviction was for assault with malice, slashing his victim's throat, and the trial court believed from reviewing the recording that defendant intended to kill his victim.

15

16

17

18

19

The purpose of the three strikes law is "to ensure longer prison sentences and greater punishment for those who commit a felony and have been previously convicted of serious and/or violent felony offenses."  (§667, subd. (b); see People v. Strong (2001) 87 Cal.App.4th 328, 338.)  Defendant's pattern of violent behavior, spanning over two decades and continuing while defendant was incarcerated, amply supports the trial court's well-reasoned conclusion that defendant was not outside the spirit of the three strikes law.

20

Silva, 2012 WL 5077925 at *3-4.[5]

21

22

23

24

[4]   Further, even if the same act were involved, the trial court would not be required to strike a strike.  The "same act" circumstance is only a factor for the court to consider, not a mandate for striking a strike.  (People v. Scott (2009) 179 Cal.App.4th 920, 931.)  We decline to follow People v. Burgos (2004) 117 Cal.App.4th 1209, 1214, which held "that the failure to strike one of the two prior convictions that arose from a single act constitutes an abuse of discretion."

25

26

27

28

[5]   Petitioner also raised this claim in his petition for review filed in the California Supreme Court.  (Resp't's Lod. Doc. 8.)  The Supreme Court denied that petition "without prejudice to any relief to which petitioner might be entitled after this court decides People v. Vargas, S203744."  (Resp't's Lod. Doc. 9.)  That court subsequently held in Vargas that California trial courts are required to dismiss one of defendant's two prior strike convictions at sentencing if those convictions were based on the same single act against a single victim.  Vargas, 59 Cal.4th 635 (2014).  As noted above, the California Court of Appeal found here that petitioner's prior strike

11

1   Petitioner's federal habeas challenge to the trial court's denial of his motion to dismiss

2   any of his prior "strike" convictions in furtherance of justice essentially involves an interpretation

3   of state sentencing law.  As explained above, "it is not the province of a federal habeas court to

4   reexamine state court determinations on state law questions."  Wilson, 562 U.S. at 5 (quoting

5   Estelle, 502 U.S. at 67-68).  This federal habeas court is bound by the state court's interpretation

6   of state law.  Bradshaw, 546 U.S. at 76; Aponte v. Gomez, 993 F.2d 705, 707 (9th Cir. 1993).  So

7   long as a sentence imposed by a state court "is not based on any proscribed federal grounds such

8   as being cruel and unusual, racially or ethnically motivated, or enhanced by indigency, the

9   penalties for violation of state statutes are matters of state concern."  Makal v. State of Arizona,

10  544 F.2d 1030, 1035 (9th Cir. 1976).  Thus, "[a]bsent a showing of fundamental unfairness, a

11  state court's misapplication of its own sentencing laws does not justify federal habeas relief."

12  Christian v. Rhode, 41 F.3d 461, 469 (9th Cir. 1994).

13  As explained by the California Court of Appeal, the sentencing judge in this case declined

14  to strike either of petitioner's prior "strike" convictions only after carefully considering all of the

15  relevant circumstances and applying the applicable state law.  Under the circumstances of this

16  case, the sentencing judge's conclusion that petitioner did not fall outside the spirit of California's

17  Three Strikes Law was not an unreasonable one.  As noted by the state appellate court, petitioner

18  has a lengthy history of violent offenses and his current offense involved violence as well.  If

19  petitioner's sentence had been imposed under an invalid statute and/or was in excess of that

20  actually permitted under state law, a federal due process violation would be presented.  See

21  Marzano v. Kincheloe, 915 F.2d 549, 552 (9th Cir. 1990) (due process violation found where the

22  petitioner's sentence of life imprisonment without the possibility of parole could not be

23  constitutionally imposed under the state statute upon which his conviction was based).  However,

24  petitioner has not made a showing that such is the case here.  Nor has petitioner demonstrated that

25  the trial court's decision not to strike one of his prior convictions was fundamentally unfair.

26  Accordingly, he is not entitled to federal habeas relief on his second claim.

27  _____

28  convictions involved two victims and also did not involve a single act.  (Resp't's Lod. Doc. 7 at
    7-8.)  Petitioner did not seek further review in state court after Vargas was decided.

1    **C. Shackling**

2       In his next claim for relief, petitioner contends that the trial court violated his rights under

3    "the Fifth, Sixth, and Fourteenth Amendments" by permitting his shackling during his trial.  (ECF

4    No. 1 at 5, 7-28.)  For the following reasons, the undersigned also recommends that relief be

5    denied with respect to this claim.

6       The state court record reflects that on the day jury selection began at petitioner trial,

7    Correctional Officer Bento from the California Department of Corrections and Rehabilitation

8    (CDCR) requested that petitioner be placed in "full restraint" during the trial.  (Reporter's

9    Transcript on Appeal (RT) at 3-4.)  Officer Bento defined "full restraint" as "the hands to the

10   waist, the leg irons, and tethered to the chair with the chain that goes to the back of the chair."

11   (Id. at 4.)  Officer Bento noted that:  (1) petitioner was convicted of second degree murder in

12   1992 and was currently serving a life sentence; (2) petitioner had risen "to the top of the Mexican

13   nationals disruptive groups in the prison, and he's known as a shot-caller or a leader for that

14   group of people;" and (3) petitioner had been "validated" by prison officials as a Mexican mafia

15   member.  (Id.)  Officer Bento also informed the trial court that while imprisoned in 2000

16   petitioner possessed and distributed heroin; in 2004 he committed "battery on an inmate;" in 2005

17   he "threatened staff;" in 2007 he "had possession of inmate-manufactured weapon;" in 2009 he

18   committed "battery on an inmate with great bodily injury" (the current case); and in 2010 he "had

19   possession of paraphernalia."  (Id.)  Officer Bento also quoted from a prison "write-up" wherein

20   petitioner stated to the reporting officer that:  (1) "if you do not stay away from my property and

21   living area that this actions [sic] could lead to generate violence between us (prison guards) and

22   myself;" (2) he was a "lifer with a very violent past and he is a very violent person;" and (3) he

23   was "a lifer without a date and has nothing to lose."  (Id. at 5.)  Officer Bento took the position

24   that petitioner had "potential for violence," and that it was therefore necessary for him to remain

25   in "full restraints" for the duration of his trial.  (Id.)

26       Petitioner's trial counsel objected to the use of any restraints on petitioner during trial.

27   Counsel argued that there was no evidence, other than "conclusory allegations without factual

28   predicate," that petitioner had a "potential for violence," posed a danger to the courtroom, or

1   intended to disrupt the proceedings.  (Id. at 5-6.)  Trial counsel stated that he had never seen

2   petitioner behave in a disruptive manner in a courtroom, even without the use of full restraints.

3   (Id. at 6-7.)  Counsel argued that "CDC's position is to ask for shackling in every single case and

4   then to come up with a listing of the reasons why in that case they feel it's correct."  (Id. at 7.)

5        Relying on the decision in People v. Duran, 16 Cal.3d 282 (1976), the trial court ruled that

6   a "manifest need" for petitioner's shackling had been demonstrated.  (Id. at 8.)  While noting that

7   shackling was "inherently prejudicial at least if it is observable by the jury," the trial judge

8   concluded that in light of petitioner's criminal record and, to a lesser extent, his history of prison

9   rules violations, "some restraint" was justified in this case.  (Id. at 9.)  The trial judge then sought

10  suggestions from the parties on "the most limited form of restraint that's the least intrusive as

11  possible although effective under the circumstances."  (Id.)

12       Petitioner's trial counsel suggested "shackling the waist only," so that petitioner could

13  communicate with counsel and take notes during his trial.  (Id. at 10.)   Trial counsel also

14  suggested that the shackles used should be "either dyed black or in some other manner

15  blackened," and that petitioner should have "an opportunity to put those inside his clothing to the

16  extent possible."  (Id. at 10-11.)  Trial counsel asked the court to obstruct the jury's view of any

17  leg shackles that might be utilized to restrain petitioner.  (Id. at 11.)  He argued, "if he is going to

18  be shackled, every effort should be undertaken to make that invisible."  (Id.)

19       The trial court ultimately found "a manifest need that restraints on the waist and the legs,

20  as we have been discussing, are the least restrictive reasonable restraints."  (Id. at 12.)  The trial

21  judge also directed that the restraints used on petitioner "should not be visible to the jury."  (Id. at

22  12.)  To this end, petitioner's restraints were wrapped in black tape to hide them from the jury and

23  to muffle their sound, and the waist chain was placed underneath petitioner's clothing.  (Id. at 13-

24  14.)  The trial judge noted that the chains would not be visible to the jury with these precautions

25  taken.  (Id. at 14.)  The trial judge also ruled that if petitioner testified in his own defense, the jury

26  would be excused while petitioner was situated in the witness stand, and again when he returned

27  to his seat at counsel table:

28  /////

And for the record, I am including a similar but separate analysis under the Cal Supreme Court's recent decision in <u>Hernandez</u>, 51 Cal.4th 733, on having an escort officer at the witness stand. It would be done outside the presence of the jury, meaning the defendant would take the stand and then leave the stand outside the presence of the jury so they would not see any restraints.

While on the stand, the waist restraints and leg restraints would not be visible to the jury. The escort officer in this courtroom sits off to the side of the witness stand more or less at the end of the jury box, not in the jury's direct line of sight to the defendant, although visible to their far right.

And for all the reasons that the Court found a manifest need under the <u>Duran</u> analysis, the Court would find the same analysis under the <u>Hernandez</u> analysis for an escort officer to accompany Mr. Silva to the stand should he testify.

(<u>Id.</u> at 15.)  Petitioner, however, did not testify at trial.

In his claim before this court, petitioner argues that the trial court erred in finding a "manifest need" for the use of shackles pursuant to the decision in <u>Duran</u>. (ECF No. 1 at 11.)  He argues that the record does not demonstrate that shackling was required in this case and that the trial court's decision to allow partial shackling at his trial "implies a general policy" of shackling all inmate/defendants accused of violent crimes.  (<u>Id.</u> at 11-12.)  Petitioner also argues that Officer Bento's arguments in support of his request for the use of shackles were "false, inaccurate, fallacious and conclusory," and were not supported by any evidence.  Petitioner contends that his prison disciplinary convictions were based on false evidence and were the result of retaliation against him by prison officials for his filing of inmate grievances on his own behalf and on behalf of other prisoners.  (<u>Id.</u> at 13-19.)

Petitioner also argues that "despite the phony efforts to conceal the shackles in this particular case, the petitioner was deliberately exposed to the jury's view during the entire proceeding."  (<u>Id.</u> at 20.)  He alleges that his shackles "were visible to the jury upon its arrival into the courtroom and upon leaving it for recess," and that his movements at the defense table made it obvious to the jury that he was shackled.  (<u>Id.</u> at 20-21.)  He argues, in essence, that the trial court's attempts to conceal his shackles were not successful.  (<u>Id.</u> at 20-21, 25-26.)

Petitioner also asserts that the trial court's ruling regarding the additional security precautions that would be taken if he elected to testify in his own defense caused him not to

15

1   testify because he believed those precautions would allow the jury to see his shackles.  (Id. at 24-

2   25, 27.)  Petitioner informs this court that he was "eager to take the witness stand and testify on

3   his own defense," but the trial court's ruling regarding his shackling "truncated petitioner's desire

4   and motivation to take the witness stand."  (Id. at 24, 25.)  Petitioner argues that if he had been

5   able to testify, his testimony would have demonstrated that the charges against him were false.

6   (Id. at 27.)

7          Petitioner raised his shackling claim for the first time in a habeas petition filed in the

8   Sacramento County Superior Court.  That court opined the claim could not be considered in a

9   habeas corpus action because it had not been raised on appeal.  (Resp't's Lod. Doc. 11 at 1.)  The

10  Superior Court also rejected the claim on the merits, stating that "the court's hearing on security

11  measures, including shackles and the stationing of an officer near petitioner if he testified,

12  satisfied the requirements in People v. Hill, (1998) 17 Cal.4th 800, 841 and People v. Duran

13  (1976) 16 Cal.3d 282, 290."  (Id.)

14         Respondent argues that the Sacramento County Superior Court's decision that petitioner's

15  shackling claim was not cognizable on habeas because it was not raised on appeal constitutes a

16  state procedural bar which precludes this court from addressing the claim on the merits.  (ECF

17  No. 17 at 24.)

18         As a general rule, "[a] federal habeas court will not review a claim rejected by a state

19  court 'if the decision of [the state] court rests on a state law ground that is independent of the

20  federal question and adequate to support the judgment."  Walker v. Martin, 562 U.S. 307, 315

21  (2011) (quoting Beard v. Kindler, 558 U.S. 53, 55 (2009).  See also Maples v. Thomas,

22  ___U.S.___, ___, 132 S. Ct. 912, 922 (2012); Greenway v. Schriro, 653 F.3d 790, 797 (9th Cir.

23  2011); Calderon v. United States District Court (Bean), 96 F.3d 1126, 1129 (9th Cir. 1996)

24  (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)).  However, a reviewing court need

25  not invariably resolve the question of procedural default prior to ruling on the merits of a claim.

26  Lambrix v. Singletary, 520 U.S. 518, 524-25 (1997); see also Franklin v. Johnson, 290 F.3d 1223,

27  1232 (9th Cir. 2002) ("Procedural bar issues are not infrequently more complex than the merits

28  issues presented by the appeal, so it may well make sense in some instances to proceed to the

1   merits if the result will be the same"); <u>Busby v. Dretke</u>, 359 F.3d 708, 720 (5th Cir. 2004) (noting

2   that although the question of procedural default should ordinarily be considered first, a reviewing

3   court need not do so invariably, especially when the issue turns on difficult questions of state

4   law). Thus, where deciding the merits of a claim proves to be less complicated and less time-

5   consuming than adjudicating the issue of procedural default, a court may exercise discretion in its

6   management of the case to reject the claims on their merits and forgo the procedural default

7   analysis. See <u>Boyd v. Thompson</u>, 147 F.3d 1124, 1127 (9th Cir. 1998); <u>Batchelor v. Cupp</u>, 693

8   F.2d 859, 864 (9th Cir.1982); <u>see also</u> <u>Franklin v. Johnson</u>, 290 F.3d 1223, 1232 (9th Cir. 2002)

9   (citing <u>Lambrix</u>, 520 U.S. at 525.) Under the circumstances presented here, the undersigned finds

10  that petitioner's shackling claim can be resolved more easily by addressing it on the merits.

11  Accordingly, the court will assume that petitioner's claim in this regard is not defaulted.

12      The Sixth and Fourteenth Amendments to the United States Constitution assure a criminal

13  defendant the right to a fair trial. See <u>Estelle v. Williams</u>, 425 U.S. 501, 503 (1976). Visible

14  shackling of a criminal defendant during trial "undermines the presumption of innocence and the

15  related fairness of the factfinding process" and "'affront[s]' the 'dignity and decorum of judicial

16  proceedings that the judge is seeking to uphold.'" <u>Deck v. Missouri</u>, 544 U.S. 622, 630-31 (2005)

17  (quoting <u>Illinois v. Allen</u>, 397 U.S. 337, 344 (1970)). See also <u>Larson v. Palmateer</u>, 515 F.3d

18  1057, 1062 (9th Cir. 2008). The Supreme Court has therefore held that "the Fifth and Fourteenth

19  Amendments prohibit the use of physical restraints visible to the jury absent a trial court

20  determination, in the exercise of its discretion, that they are justified by a state interest specific to

21  a particular trial." <u>Deck</u>, 544 U.S. at 629. Those interests include "physical security,"

22  "courtroom decorum" and "courtroom security." <u>Id.</u> at 624, 628. Accordingly, criminal

23  defendants have "the right to be free of shackles and handcuffs in the presence of the jury, unless

24  shackling is justified by an essential state interest." <u>Ghent v. Woodford</u>, 279 F.3d 1121, 1132

25  (9th Cir. 2002).

26      Shackling is not unconstitutionally prejudicial per se. <u>Allen</u>, 397 U.S. at 343-44; <u>Duckett</u>

27  <u>v. Godinez</u>, 67 F.3d 734, 748 (9th Cir. 1995) ("shackling is inherently prejudicial, but it is not per

28  se unconstitutional"). Unjustified shackling does not rise to the level of constitutional error

1   unless the defendant makes a showing that he suffered prejudice as a result.  Ghent, 279 F.3d at

2   1132 (citing United States v. Olano, 62 F.3d 1180, 1190 (9th Cir 1995) and United States v.

3   Halliburton, 870 F.2d 557, 561-62 (9th Cir. 1989)); see also Larson, 515 F.3d at 1064 (state trial

4   court's violation of the petitioner's due process rights in requiring him to wear security leg brace

5   during his trial found to be harmless).  The Ninth Circuit has held that "the greater the intensity of

6   shackling and the chains' visibility to the jurors, the greater the extent of prejudice."  Spain v.

7   Rushen, 883 F.2d 712, 722 (9th Cir. 1989).  Thus, it has been recognized that "physical restraints

8   such as a waist chain, leg irons or handcuffs may create a more prejudicial appearance than more

9   unobtrusive forms of restraint."  Larson, 515 F.3d at 1064.

10       In a federal habeas corpus proceeding such as this one, the court must determine whether

11   any error had a "substantial and injurious effect" on the jury's verdict.  Brecht v. Abrahamson ,

12   507 U.S. 619, 623 (1993); Larson, 515 F.3d at 1064.  See also Fry v. Pliler, 551 U.S. 112, 121-22

13   (2007) (Brecht harmless error review applies whether or not the state court recognized the error

14   and reviewed it for harmlessness).  In the context of a claim based on shackling at trial, a federal

15   habeas court is to "determine whether what [the jurors] saw was so inherently prejudicial as to

16   pose an unacceptable threat to defendant's right to a fair trial."  Holbrook v. Flynn, 475 U.S. 560,

17   572 (1986).  In the Ninth Circuit, "only the most egregious kind of shackling has been found . . .

18   to deny due process."  Castillo v. Stainer, 983 F.2d 145, 148 (9th Cir. 1991).  See also Pember v.

19   Ryan, No. CV-11-1600-PHX-SMM (LOA), 2012 WL 4747175, at *15 (D. Az. June 19, 2012)

20   (denying habeas relief on a claim based on shackling at trial because petitioner did not establish

21   the shackles were visible to the jury and the evidence of his guilt was substantial); Wagener v.

22   Kenan, No. 07-CV-1584-JLS (BLM), 2008 WL 3925721, at *39 (S.D. Cal. Aug. 22, 2008)

23   (denying habeas relief even though the trial judge provided no explanation for the use of shackles

24   at trial because there was no evidence that any juror had viewed the shackles).  The Ninth Circuit

25   has also held that the unconstitutional shackling of a defendant "results in prejudice only if the

26   evidence of guilt is not 'overwhelming.'"  Cox. v. Ayers, 613 F.3d 883, 891 (9th Cir. 2010)

27   (shackling not prejudicial where the evidence against petitioner was "overwhelming").  See also

28   Dyas v. Poole, 317 F.3d 934, 937 (9th Cir. 2003) (finding prejudice where defendant was charged

1  with a violent crime, the evidence against him was "close," and at least one juror saw defendant's

2  shackles during the trial).

3      Here, the trial court provided the individualized determination of necessity required by the

4  Supreme Court in <u>Deck</u> and concluded that, given petitioner's history of prior criminal

5  convictions and prison violence, the use of a waist chain and leg irons were justified by the

6  court's interest in maintaining the security of the courtroom.  The trial court also attempted to

7  ensure that petitioner's shackles were not visible to the jury and there is no evidence before this

8  court that those efforts were unsuccessful.  Given this record, the trial court's decision regarding

9  the shackling of petitioner during his trial does not violate the federal legal principles set forth

10  above.

11      Even assuming arguendo that the trial court erred in allowing petitioner to be shackled

12  during his trial, petitioner has failed to show that any error resulted in him suffering any

13  prejudice.  It is true that petitioner's waist chain and leg irons were a more substantial type of

14  restraint than other, more unobtrusive restraints.  However, there is no evidence, aside from

15  petitioner's unsupported allegations, that the shackles were ever seen by any member of his jury

16  or that they prevented or restricted the defense from fully presenting its case.  Petitioner's

17  unsupported and self-serving after-the-fact statements that the use of the restraints and a security

18  officer effectively prevented him from testifying in his own defense are also insufficient to

19  establish prejudice.  Notably, neither petitioner nor his trial counsel complained that petitioner's

20  decision not to testify was a result of the trial court's ruling regarding the use of restraints.  In any

21  event, the evidence against petitioner in this case was substantial, if not overwhelming.  By the

22  very nature of the charges against him the jury was well aware that petitioner was a prisoner.

23  This would have mitigated any concern about prejudice stemming from the use of shackles.  <u>See</u>

24  <u>Cox</u>, 613 F.3d at 891 ("[W]e hold that the evidence against Petitioner was so 'overwhelming' that

25  the 'marginal bias created by the shackles' had no prejudicial effect on the guilty verdict.");

26  <u>Larson</u>, 515 F.3d at 1064 ("Although we are troubled by the trial court's imposition of a visible

27  security restraint without making a finding of necessity on the record, we conclude that Larson

28  /////

1    has not shown that wearing the leg brace for the first two days of his six-day trial had a

2    'substantial and injurious effect or influence in determining the jury's verdict.'").

3        There is nothing in the record before this court that the shackling of petitioner at trial had

4    a substantial and injurious effect on the jury's verdict.  Accordingly, petitioner is not entitled to

5    federal habeas relief with respect to his shackling claim.

6        **D.  Ineffective Assistance of Counsel**

7        In his next claim for relief, petitioner alleges that his trial counsel rendered ineffective

8    assistance at the preliminary hearing in state court .  After setting forth the applicable legal

9    principles, the court will address this claim in turn below.

10       The clearly established federal law governing ineffective assistance of counsel claims is

11   that set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984).  To

12   succeed on a Strickland claim, a defendant must show that (1) his counsel's performance was

13   deficient and that (2) the "deficient performance prejudiced the defense."  Id. at 687.  Counsel is

14   constitutionally deficient if his or her representation "fell below an objective standard of

15   reasonableness" such that it was outside "the range of competence demanded of attorneys in

16   criminal cases."  Id. at 687–88 (internal quotation marks omitted).  "Counsel's errors must be 'so

17   serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'"  Richter, 562 at

18   104 (quoting Strickland, 466 U.S. at 687).  A reviewing court is required to make every effort "to

19   eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's

20   challenged conduct, and to evaluate the conduct from counsel's perspective at the time."

21   Strickland, 466 U.S. at 669.  See also Richter, 562 U.S. at 107 (same).

22       Reviewing courts must "indulge a strong presumption that counsel's conduct falls within

23   the wide range of reasonable professional assistance."  Strickland, 466 U.S. at 689.  There is in

24   addition a strong presumption that counsel "exercised acceptable professional judgment in all

25   significant decisions made."  Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing

26   Strickland, 466 U.S. at 689).  This presumption of reasonableness means that the court must "give

27   the attorneys the benefit of the doubt," and must also "affirmatively entertain the range of

28   possible reasons [defense] counsel may have had for proceeding as they did."  Cullen v.

1   Pinholster, 563 U.S. 170, ___, 131 S. Ct. 1388, 1407 (2011) (internal quotation marks and

2   alterations omitted).

3          Reasonable tactical decisions, including decisions with regard to the presentation of the

4   case, are "virtually unchallengeable." Strickland, 466 U.S. at 687-90.  However, defense counsel

5   has a "duty to make reasonable investigations or to make a reasonable decision that makes

6   particular investigations unnecessary." Strickland, 466 U.S. at 691.  Counsel must, "at a

7   minimum, conduct a reasonable investigation enabling him to make informed decisions about

8   how best to represent his client." Hendricks v. Calderon, 70 F.3d 1032, 1035 (9th Cir. 1995)

9   (quoting Sanders, 21 F.3d at 1456 (internal citation and quotations omitted).

10          "The standards created by Strickland and § 2254(d) are both "highly deferential," and

11   when the two apply in tandem, review is 'doubly' so." Richter, 562 U.S. at 105 (citations

12   omitted).  Thus, in federal habeas proceedings involving "claims of ineffective assistance of

13   counsel, . . . AEDPA review must be """doubly deferential""" in order to afford "both the state

14   court and the defense attorney the benefit of the doubt." Woods v. Daniel, ___U.S.___, ___, 135

15   S. Ct. 1372, 1376 (2015) (quoting Burt v. Titlow, 571 U.S. ___, ___, 134 S. Ct. 10, 13 (2013)).

16   As the Ninth Circuit has recently acknowledged, "The question is whether there is any reasonable

17   argument that counsel satisfied Strickland's deferential standard." Bemore v. Chappell, 788 F.3d

18   1151, 1162 (9th Cir. 2015) (quoting Richter, 562 U.S. at 105).  See also Griffin v. Harrington,

19   727 F.3d 940, 945 (9th Cir. 2013) ("The pivotal question is whether the state court's application

20   of the Strickland standard was unreasonable. This is different from asking whether defense

21   counsel's performance fell below Strickland's standard.") (quoting Richter, 562 U.S. at 101).

22          Petitioner raises several instances which he claims constituted ineffective assistance of

23   counsel.  First, he argues that his trial counsel improperly failed to object to the admission into

24   evidence at his preliminary hearing of a videotape of the prison assault on the grounds that the

25   videotape had been edited by the prosecution.  (ECF No. 1 at 29-30.)  Petitioner claims that his

26   counsel should have insisted on reviewing the entire videotape himself and should have requested

27   that the entire videotape, and not just the edited version, be admitted.  (Id. at 30.)  Petitioner

28   /////

1    contends that the videotape, as admitted, was "distorted, edited, and no[t] properly authenticated."

2    (Id. at 30-31.)

3        Petitioner also claims that his counsel failed to object at his preliminary hearing to the

4    admission of:  (1) what he characterizes as "fake pictures" of a blood stain on the corner of the

5    razor blade found at the scene of the assault; (2) the actual razor blade found at the scene; (3) a

6    "blood stain fingerprint on petitioner's right index and thumb, including a cut;" and (4) a closeup

7    photograph of petitioner's right index finger showing a cut on his finger.  (Id. at 32.)  Petitioner

8    denies that he suffered an injury to his finger as a result of the altercation in question.  (Id.)  In

9    support of this assertion, petitioner attaches a prison "synopsis/summary of incident" report which

10   states, "Inmate Silva was medically examined by LVN D. Dolcini and noted . . . no injuries as a

11   result of this incident."  (Id. at 127.)  Petitioner also asserts that his counsel failed to ensure that

12   the photographs introduced at his preliminary hearing were properly authenticated.  (Id. at 34.)

13   Petitioner complains that the blood stain found on the razor blade was not "processed for DNA"

14   or tested for fingerprints.  (Id.)

15       Petitioner further argues that his counsel failed to conduct sufficient investigation or to

16   make "careful factual inquiries with a view to developing a defense" prior to his preliminary

17   hearing.  (Id. at 32.)  In particular, petitioner argues that the razor blade found near the assault

18   scene was not considered contraband on the general population yard.  Petitioner suggests that the

19   razor blade may have been on the yard for an innocent reason, such as for an inmate to "cut their

20   hair or . . . prepare their food."  (Id. at 33.)

21       Petitioner also faults his counsel for agreeing to stipulate at his preliminary hearing to the

22   "time of day" appearing on the video of the assault that was introduced.  (Id. at 35.)  He argues

23   that his counsel "had numerous reasons to had [sic] objected to the admission of the

24   unauthenticated evidence and other inadmissible evidence at issue, and also had numerous

25   grounds on which he could move the court for its exclusion, but he failed to act with reasonable

26   diligence."  (Id.)  Petitioner further complains that his counsel failed to "produce any favorable

27   evidence" at his preliminary hearing and failed to move to dismiss the charges against petitioner

28   on the grounds of the insufficiency of the evidence.  (Id.)

1         In his traverse petitioner presents several additional arguments regarding the claimed

2    ineffective assistance rendered by his counsel.  He points to evidence that another inmate also had

3    blood stains on his clothing after the incident.  Petitioner notes that the victim was hiding his face

4    with a raincoat, and argues this indicates "he could be slashed earlier."  (ECF No. 25 at 26.)  He

5    suggests that the blood on his hand could have come from hitting the ground after he was ordered

6    to do so by correctional officers and that it was not possible a razor blade found on the ground

7    would have blood on it because it was raining.  (Id.)  Petitioner concludes by arguing that his trial

8    counsel should have presented all of this evidence at his preliminary hearing.

9         Petitioner raised these claims of ineffective assistance of counsel for the first time in his

10   petition for writ of habeas corpus filed in the Sacramento County Superior Court.  That court

11   rejected all of the arguments, reasoning as follows:

> Petitioner claims that his counsel should have objected to the admission of a videotape and photos because they lacked foundation.  Petitioner's exhibits, however, show that officers documented the handling of all of the evidence in the case. Petitioner also claims that his counsel should have challenged the videotape as being distorted, but petitioner has failed to explain how it was distorted.  Accordingly, Petitioner has failed to show that there were valid grounds upon which to object and cannot support his claim of deficient performance.  (See People v. Price (1991) 1 Cal.4th 324, 397 [counsel's failure to make futile or unmeritorious motion, objection, argument, or request is not ineffective assistance].)
>
> Petitioner also claims that had counsel conducted a proper investigation he would have learned that razors are permitted in most parts of the prison.  However, in a case like this where a victim has been slashed with a razor blade this information would be irrelevant.  Counsel's performance was not deficient in this regard.
>
> To the extent that petitioner's allegations are focused on his attorney's failure to present evidence at the preliminary hearing, it should be noted that the purpose of a preliminary hearing is to determine that a crime occurred and that the accused committed it. (Penal Code section 866(b).  Although the defense has the right to call witnesses and present a defense, it is unusual for the defense to follow this approach because it provides the prosecutor with discovery about the defendant's case.  (Cal. Criminal Practice and Procedure (2013 Ed.) section 8.13.)   Thus, his counsel was following the preferred practice by failing to present any evidence at the preliminary hearing.

(Resp't's Lod. Doc. 11 at 3.)

1    Petitioner has failed to demonstrate either deficient performance or prejudice with respect

2  to these claims that he received ineffective assistance of counsel.  Specifically, petitioner has

3  failed to show that he suffered prejudice from his counsel's failure to insist that the entire

4  videotape of the assault be admitted at the preliminary hearing, counsel's failure to object to the

5  admission of pictures of the razor blade and petitioner's finger, or counsel's agreement to

6  stipulate to the time of day set forth on the videotape of the assault at the preliminary hearing.

7  There is no evidence before this federal habeas court suggesting that the full, unedited videotape

8  would have been more favorable to petitioner, that the pictures in question were not authentic, or

9  that the time of day reflected on the video was inaccurate.  On the contrary, the record of both

10  petitioner's preliminary hearing and his trial reflects that the photographs and videotape admitted

11  were properly authenticated.  (See, e.g., Resp't's Lod. Doc. 10, Exs. 6, 7; RT at 53-63, 72-83,

12  114-15; Clerk's Transcript on Appeal (CT) at 27-34).  Of course, defense counsel's failure to

13  make a meritless objection does not constitute ineffective assistance.  See Jones v. Smith, 231

14  F.3d 1227, 1239 n.8 (9th Cir. 2000) (citing Boag v. Raines, 769 F.2d 1341, 1344 (9th Cir. 1985))

15  (an attorney's failure to make a meritless objection or motion does not constitute ineffective

16  assistance of counsel)); Rupe v. Wood, 93 F.3d 1434, 1445 (9th Cir. 1996) ("the failure to take a

17  futile action can never be deficient performance").  Petitioner has failed to demonstrate that any

18  of the arguments he now suggests counsel should have made would have led to the dismissal of

19  the charges or resulted in a different verdict at his trial.

20    With regard to petitioner's allegations concerning the lack of sufficient investigation by

21  counsel, he has failed to make any showing that further defense investigation would have resulted

22  in the discovery of evidence favorable to the defense or led to a different outcome either at his

23  preliminary hearing or his trial.  In the absence of such a showing, petitioner has failed to

24  demonstrate prejudice with respect to this claim.  See Villafuerte v. Stewart, 111 F.3d 616, 632

25  (9th Cir. 1997) (petitioner's ineffective assistance claim denied where he presented no evidence

26  concerning what counsel would have found had he investigated further, or what lengthier

27  preparation would have accomplished).  Moreover, as suggested by the Sacramento County

28  Superior Court, petitioner's counsel may well have deferred at the preliminary hearing, electing to

1   wait until trial to present any defense evidence in order to avoid alerting the prosecution to his

2   defense strategy.  Any decision to follow that course would have in keeping with typical defense

3   strategy and certainly have been well within the range of competence demanded of attorneys in

4   criminal cases.

5           The decision of the Sacramento County Superior Court rejecting petitioner's claims of

6   ineffective assistance of counsel is not contrary to or an unreasonable application of the decision

7   in Strickland, nor was it "so lacking in justification that there was an error well understood and

8   comprehended in existing law beyond any possibility for fairminded disagreement."  Richter, 562

9   U.S. at 103.  Accordingly, petitioner is not entitled to federal habeas relief on his ineffective

10  assistance of counsel claims.

11          **E.  Insufficient Evidence**

12          In his next claim for relief, petitioner argues that the evidence admitted at his trial was

13  insufficient to support "each element of the crime from which petitioner was convicted."  (ECF

14  No. 1 at 36.)  Specifically, petitioner argues there was insufficient evidence that he harbored

15  malice, that he possessed a weapon, that he committed an aggravated assault, or that he is a

16  recidivist for purposes of California sentencing statutes.  (Id. at 39-67.)  In support of this claim

17  petitioner provides his own version of the events and an analysis of those events as reported by

18  correctional officers, and argues that he was not guilty but was simply a "scapegoat in order to

19  conceal the officers' ineptitude."  (Id. at 36-67.)  Petitioner also provides his own analysis of the

20  evidence introduced at his trial, including the videotape of the altercation, and explains why it

21  fails to support his convictions.  (Id. at 43-45.)  In doing so, petitioner concedes that he hit the

22  victim in the face on the morning in question, but denies that he slashed him with a razor blade.

23  (Id. at 41.)  Petitioner argues, "the evidence introduced at petitioner's trial simply showed

24  petitioner hitting the victim without enough force likely to produce great bodily injury."  (Id. at

25  54.)  Petitioner informs this court that another unidentified inmate attempted to stab him and that

26  just as he attempted to run away from that inmate "officers activated the alarm and ordered the

27  yard down."  (Id. at 41.)

28  /////

1    Petitioner also argues that possession of a razor blade does not constitute a violation of

2    California Penal Code § 4502(a) if the blade was carried, but not used as a weapon on the general

3    population yard.  (Id. at 46.)  He contends there is no evidence he possessed the razor blade found

4    on the yard.  (Id.)

5    Petitioner raised these claims of insufficiency of the evidence for the first time in his

6    habeas petition filed in the Sacramento County Superior Court.  That court rejected the claims on

7    procedural grounds and also on the merits, reasoning as follows:

8    As to the sufficiency of the evidence, it appears that the videotape
     Petitioner focuses on could have been authenticated, if necessary.

9    Each incident report that petitioner supplied as an exhibit recounts
     the handling of evidence from the incident.  Petitioner does not

10   specify what relevant information he thinks was omitted from the
     video.  In any case, petitioner admitted that he struck the victim

11   across the face and hit the victim in the head.  A jury could
     reasonably conclude that petitioner was the person slashing the

12   victim.

13   (Resp't's Lod. Doc. 11 at 2.)

14   Assuming arguendo that petitioner's claims of insufficiency of the evidence are not

15   subject to a procedural default, petitioner is not entitled to federal habeas relief.  The Due Process

16   Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of

17   every fact necessary to constitute the crime with which he is charged."  In re Winship, 397 U.S.

18   358, 364 (1970).  There is sufficient evidence to support a conviction if, "after viewing the

19   evidence in the light most favorable to the prosecution, any rational trier of fact could have found

20   the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S.

21   307, 319 (1979).  "[T]he dispositive question under Jackson is 'whether the record evidence could

22   reasonably support a finding of guilt beyond a reasonable doubt.'"  Chein v. Shumsky, 373 F.3d

23   978, 982 (9th Cir. 2004) (quoting Jackson, 443 U.S. at 318).  Put another way, "a reviewing court

24   may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of

25   fact could have agreed with the jury."  Cavazos v. Smith, ___ U.S. ___, ___, 132 S. Ct. 2, 4

26   (2011).

27   In conducting federal habeas review of a claim of insufficiency of the evidence, "all

28   evidence must be considered in the light most favorable to the prosecution."  Ngo v. Giurbino,

26

1   651 F.3d 1112, 1115 (9th Cir. 2011).  "<u>Jackson</u> leaves juries broad discretion in deciding what

2   inferences to draw from the evidence presented at trial," and it requires only that they draw

3   "'reasonable inferences from basic facts to ultimate facts.'"  <u>Coleman v. Johnson</u>, ___ U.S. ___,

4   ___, 132 S. Ct. 2060, 2064 (2012) (citation omitted).  "'Circumstantial evidence and inferences

5   drawn from it may be sufficient to sustain a conviction.'"  <u>Walters v. Maass</u>, 45 F.3d 1355, 1358

6   (9th Cir. 1995) (citation omitted).[6]

7        "A petitioner for a federal writ of habeas corpus faces a heavy burden when challenging

8   the sufficiency of the evidence used to obtain a state conviction on federal due process grounds."

9   <u>Juan H. v. Allen</u>, 408 F.3d 1262, 1274 (9th Cir. 2005).  In order to grant relief, the federal habeas

10   court must find that the decision of the state court rejecting an insufficiency of the evidence claim

11   reflected an objectively unreasonable application of <u>Jackson</u> and <u>Winship</u> to the facts of the case.

12   <u>Ngo</u>, 651 F.3d at 1115; <u>Juan H.</u>, 408 F.3d at 1275 & n.13.  Thus, when a federal habeas court

13   assesses a sufficiency of the evidence challenge to a state court conviction under AEDPA, "there

14   is a double dose of deference that can rarely be surmounted."  <u>Boyer v. Belleque</u>, 659 F.3d 957,

15   964 (9th Cir. 2011).  The United States Supreme Court has labeled the relevant standard under

16   AEDPA a "twice-deferential standard."  <u>Parker v. Matthews</u>, ___ U.S. ___, 132 S. Ct. 2148, 2152

17   (2012).  <u>See also</u> <u>Creech v. Frauenheim</u>, ___ F.3d ___, ___, 2015 WL 5090775 at *4 (9th Cir.

18   Aug. 31, 2015); <u>Kyzar v. Ryan</u>, 780 F.3d 940, 948 (9th Cir. 2015) (citing <u>Coleman</u>, 132 S. Ct. at

19   2062) ("Under AEDPA, Kyzar's sufficiency of the evidence claim 'face[s] a high bar in federal

20   habeas proceedings because [it is] subject to two layers of judicial deference'").

21        Based on the evidence introduced at petitioner's trial, as summarized by the California

22   Court of Appeal, it was not unreasonable for the state court to determine that a rational trier of

23   fact could have found beyond a reasonable doubt that petitioner committed the crimes he was

24   charged with committing.  The correctional officers who observed the relevant events testified at

25   petitioner's trial and a videotape of the incident was played for the jury.  Petitioner concedes that

26   

---

27   [6] The federal habeas court determines sufficiency of the evidence in reference to the substantive
     elements of the criminal offense as defined by state law.  <u>Jackson</u>, 443 U.S. at 324 n.16; <u>Chein</u>,
28   373 F.3d at 983.

1   the videotape introduced into evidence at his trial shows him "walk toward the victim and toss a

2   backhand with his right arm." (ECF No. 25 at 30.)  Petitioner was identified as one of two

3   possible suspects in the commission of the crime and he was the only inmate who ran from the

4   altercation instead of heeding the order of correctional officers to get down on the ground.  (RT at

5   60-63, 77-78, 134-38.)  A razor blade with blood on it was found at the scene and petitioner's

6   thumb had a cut on it which was bleeding.  (Id. at 72, 86.)  The victim's injuries required sutures

7   to close.  (Id. at 115.)  All of this evidence supported the jury's verdict that petitioner was guilty

8   of the charged crimes.  The fact that the videotape evidence was arguably consistent with another

9   interpretation of the events, or that there was evidence tending to support petitioner's defense that

10   he did not slash the victim with a razor blade but only struck him, is not dispositive of petitioner's

11   insufficiency of the evidence claim.  What is dispositive is that the evidence of record, considered

12   in the light most favorable to the prosecution, reasonably supports the jury's finding that

13   petitioner was guilty of the charged crimes beyond a reasonable doubt.  Chein, 373 F.3d at 982.

14           The decision of the California courts rejecting petitioner's claim that the evidence

15   introduced at his trial was insufficient to support his conviction on the charges brought against

16   him was not contrary to or an unreasonable application of the decisions in Jackson and In re

17   Winship to the facts of this case.  In light of the evidence introduced at petitioner's trial, this court

18   cannot conclude that "no rational trier of fact could have agreed with the jury."  Smith, 132 S. Ct.

19   at 4.  See also Coleman, 132 S. Ct. at 2062 (quoting Cavazos, 132 S. Ct. at 4).  Accordingly,

20   petitioner is not entitled to federal habeas relief with respect to his insufficiency of the evidence

21   claims.

22           Petitioner also challenges the sentence imposed against him, arguing that he is not a

23   "recidivist" as that term is defined in the relevant California statutes.  (ECF No. 1 at 63-67.)

24   Petitioner makes the following specific arguments:  (1) because he did not suffer any felony

25   convictions before his 1992 conviction and his "criminal history is minimal," he is not a habitual

26   offender; (2) because his 1992 convictions for attempted murder and murder arose "from a single

27   act" and were not tried in separate proceedings, he did not fall within California's Three Strikes

28   Law; and (3) his 1992 conviction is invalid because he was not appointed counsel, as required by

1   <u>Gideon v. Wainwright</u>, 372 U.S. 335 (1963), and because the prosecutor committed error under

2   <u>Brady v. Maryland</u>, 373 U.S. 83 (1963); and (4) his current offense of conviction does not

3   constitute a "strike."  (<u>Id.</u>)

4          Petitioner's federal habeas challenge to his state sentence involves solely an interpretation

5   and/or application of state sentencing law.  As explained above, so long as a sentence imposed by

6   a state court "is not based on any proscribed federal grounds such as being cruel and unusual,

7   racially or ethnically motivated, or enhanced by indigency, the penalties for violation of state

8   statutes are matters of state concern."  <u>Makal</u>, 544 F.2d at 1035.  Thus, absent a showing of

9   fundamental unfairness, petitioner is not entitled to federal habeas relief on his claims of

10  sentencing error under state law.  Under the circumstances of this case, and in light of petitioner's

11  prior criminal history, he has failed to demonstrate that his sentence for assault with a deadly

12  weapon by a life prisoner and possession of a sharp instrument by an inmate, imposed pursuant to

13  California's Three Strikes law, was fundamentally unfair or unusually harsh.  Accordingly,

14  petitioner is not entitled to federal habeas relief on these sentencing claims.[7]

15         **F.  Prosecutorial Misconduct**

16         In his last claim for federal habeas relief, petitioner argues that prosecutorial misconduct

17  in his case violated his right to due process.  (ECF No. 1 at 68-70.)  Specifically, petitioner argues

18  that the prosecutor improperly destroyed a portion of the surveillance videotape of the slashing

19  incident.  According to petitioner, the missing portion of the video showed petitioner "in an

20  upright position in front of the educational building's door, with his hands raised, and with a gray

21  baseball cap on his hand."  (<u>Id.</u> at 68.)  Petitioner contends the prosecutor deliberately destroyed

22  this portion of the videotape in order to "make the jury believe that due [to] the fact petitioner was

23  not moving his right hand at the time he was walking towards the incident site, he (petitioner) was

24  /////

25

26  [7]  Throughout his petition and traverse, petitioner refers in passing to other possible claims for
    relief, including violations of the cruel and unusual punishment clause of the Eighth Amendment

27  and the double jeopardy clause of the Fifth Amendment.  (<u>See</u> <u>e.g.</u>, ECF No. 1 at 66-67.)
    Petitioner has failed to demonstrate entitlement to federal habeas relief with respect to any of

28  these potential, yet unexhausted, claims.

1    carry[ing] a weapon when, in fact, petitioner was carrying his gray baseball cap with his personal

2    belongings in it." (Id. at 69.)

3         Petitioner claims that the prosecutor took advantage of this situation during his closing

4    argument to the jury, when he emphasized that the videotape of the incident showed that

5    petitioner's right arm was not moving as he approached the victim, as if he were carrying the

6    razor blade in his right hand.  Specifically, the prosecutor argued to the jury:

7                   Some of the direct and circumstantial evidence:  Walking towards
                    the group with a very deliberate purpose.  Right arm is not moving.
8                   Left hand is swinging.   Right arm isn't; it's right by his side.
                    Approaches the victim from behind.  Does that reaching over where
9                   he's on his tippy toes.  He's not throwing a punch.  When he's
                    doing that, the left side of (the victim's) face is cut.
10

11   (RT at 297-98.)  Petitioner argues that this argument by the prosecutor unfairly capitalized on the

12   absence of the portion of the videotape showing petitioner holding a baseball cap in his right arm.

13        Petitioner raised these claims of prosecutorial misconduct for the first time in his habeas

14   petition filed in the Sacramento County Supreme Court.  Relief as to the claims was summarily

15   denied by that court.  (Resp't's Lod. Doc. 15.) [8]

16        A criminal defendant's due process rights are violated when a prosecutor's misconduct

17   renders a trial fundamentally unfair.  Darden v. Wainwright, 477 U.S. 168, 181 (1986).  Claims of

18   prosecutorial misconduct are reviewed "'on the merits, examining the entire proceedings to

19   determine whether the prosecutor's [actions] so infected the trial with unfairness as to make the

20   resulting conviction a denial of due process.'"  Johnson v. Sublett, 63 F.3d 926, 929 (9th Cir.

21   ─────────────
     [8]   In his habeas petition filed in the Sacramento County Superior Court, petitioner argued that his
22   trial counsel rendered ineffective assistance in failing to object to remarks made by the prosecutor
     during his closing argument.  That court rejected those claims, reasoning as follows:
23
                    Finally, petitioner has alleged that counsel should have objected to
24                  certain remarks of the prosecutor in opening or closing argument.
                    It is highly doubtful that any of the prosecutor's statements were
25                  improper.  Even if there were [sic], the trial court later instructed
                    jurors that they should follow the court's instructions on the law,
26                  not the comments or statements by the attorneys in this regard.
                    Petitioner cannot show, therefore, that he was prejudiced by his
27                  attorney's performance.

28   (Resp't's Lod. Doc. 11 at 3.)

1   1995) (citation omitted).  See also Greer v. Miller, 483 U.S. 756, 765 (1987); Donnelly v.

2   DeChristoforo, 416 U.S. 637, 643 (1974); Towery v. Schriro, 641 F.3d 300, 306 (9th Cir. 2010).

3   Relief on such claims is limited to cases in which the petitioner can establish that prosecutorial

4   misconduct resulted in actual prejudice to the petitioner.  Darden, 477 U.S. at 181-83; see also

5   Towery, 641 F.3d at 307 ("When a state court has found a constitutional error to be harmless

6   beyond a reasonable doubt, a federal court may not grant habeas relief unless the state court's

7   determination is objectively unreasonable").  Prosecutorial misconduct violates due process when

8   it has a substantial and injurious effect or influence in determining the jury's verdict.  See Ortiz-

9   Sandoval v. Gomez, 81 F.3d 891, 899 (9th Cir. 1996).

10        "Improper argument does not, per se, violate a defendant's constitutional rights."  Jeffries

11   v. Blodgett, 5 F.3d 1180, 1191 (9th Cir. 1993).  In considering claims of prosecutorial misconduct

12   involving allegations of improper argument, the court must examine the likely effect of the

13   statements in the context in which they were made and determine whether the comments so

14   infected the trial with unfairness as to render the resulting conviction a denial of due process.

15   Darden, 477 U.S. at 181-83; Donnelly, 416 U.S. at 643; Turner v. Calderon, 281 F.3d 851, 868

16   (9th Cir. 2002).  In fashioning closing arguments, prosecutors are allowed "reasonably wide

17   latitude," United States v. Birges, 723 F.2d 666, 671-72 (9th Cir. 1984), and are free to argue

18   "reasonable inferences from the evidence."  United States v. Gray, 876 F.2d 1411, 1417 (9th Cir.

19   1989).  See also Duckett, 67 F.3d at 742 .  "[Prosecutors] may strike 'hard blows,' based upon the

20   testimony and its inferences, although they may not, of course, employ argument which could be

21   fairly characterized as foul or unfair."  United States v. Gorostiza, 468 F.2d 915, 916 (9th Cir.

22   1972).  "[I]t 'is not enough that the prosecutors' remarks were undesirable or even universally

23   condemned.'"  Darden, 477 U.S. at 181 (citation omitted).  The issue is whether the "remarks, in

24   the context of the entire trial, were sufficiently prejudicial to violate [petitioner's] due process

25   rights."  Donnelly, 416 U.S. at 639.  See also United States v. Robinson, 485 U.S. 25, 33 (1988)

26   ("[P]rosecutorial comment must be examined in context. . . .")

27        A failure to preserve evidence violates a defendant's right to due process if the

28   unavailable evidence possessed "exculpatory value that was apparent before the evidence was

31

1    destroyed, and [is] of such a nature that the defendant would be unable to obtain comparable

2    evidence by other reasonably available means." California v. Trombetta, 467 U.S. 479, 489

3    (1984).  To obtain relief based on the alleged destruction of evidence, however, a petitioner must

4    also demonstrate that the police acted in bad faith in failing to preserve potentially useful

5    evidence.  Arizona v. Youngblood, 488 U.S. 51, 58 (1988); Phillips v. Woodford, 267 F.3d 966

6    (9th Cir. 2001).  The presence or absence of bad faith turns on the government's knowledge of the

7    apparent exculpatory value of the evidence at the time it was lost or destroyed.  Youngblood, 488

8    U.S. at 56-57 n.*; see also United States v. Cooper, 983 F.2d 928, 931 (9th Cir. 1993).  For

9    instance, the mere failure to preserve evidence which could have been subjected to tests which

10   might have exonerated the defendant does not constitute a due process violation.  Youngblood,

11   488 U.S. at 57; Miller v. Vasquez, 868 F.2d 1116, 1120 (9th Cir. 1989).

12          Here, petitioner has failed to demonstrate that the prosecutor committed misconduct under

13   these applicable standards.  First, petitioner has failed to show that the prosecutor destroyed any

14   part of the videotape, or that such destruction was conducted with knowledge that any portion of

15   the tape had exculpatory value.  Petitioner's unsupported allegations in this regard are insufficient

16   to establish either prosecutorial misconduct or prejudice.

17          With regard to the prosecutor's closing argument, the challenged portion of that argument

18   is a reasonable inference from the evidence presented at petitioner's trial.  Petitioner himself

19   concedes that the videotape showed him making a backhand motion toward the victim with

20   something in his hand.  In any event, as noted by the Sacramento County Superior Court,

21   petitioner's jury was instructed that "nothing that the attorneys say is evidence," and that "[i]n

22   their opening statements and their closing arguments, the attorneys will discuss the case, but their

23   remarks are not evidence."  (CT at 94.)  These jury instructions would have mitigated any

24   possible prejudice flowing from the prosecutor's remarks, even if they could be characterized in

25   some way as evidencing prosecutorial misconduct.  See Kansas v. Marsh, 548 U.S. 163 (2006);

26   Richardson v. Marsh, 481 U.S. 200, 206 (1987) (applying "the almost invariable assumption of

27   the law that jurors follow their instructions"); Fields v. Brown, 503 F.3d 755, 782 (9th Cir. 2007).

28   /////

Petitioner also objects to the following statements by the prosecutor during his closing argument:

> So go through that video.  Look at the photographs.  Recall the testimony of the officers.  And it leads to the only reasonable conclusion.  Mr. Silva committed the act.  He's guilty of Count One and Count Three.

(RT at 298-99.)  Petitioner argues that with these comments the prosecutor offered an improper opinion that petitioner was guilty and vouched for the credibility of the government witnesses. (ECF No. 1 at 69.)[9]

The undersigned does not find that the prosecutor's statements, quoted above, improperly vouched for the government's witnesses or constituted an improper expression of personal opinion that petitioner was guilty by the prosecutor.  These brief remarks did not place the prestige of the government behind any of prosecution witness' testimony nor did they suggest that information not presented to the jury supported the testimony of any trial witness.  Rather, the prosecutor's statements that the evidence presented at trial established that petitioner was "guilty of Count One and Count Three" constituted a reasonable inference from the evidence presented.

Under the circumstances of this case, and for the reasons set forth above, the decision of the California Court of Appeal rejecting petitioner's argument that the prosecutor committed misconduct was not contrary to or an unreasonable application of clearly established federal law. Accordingly, petitioner is also not entitled to federal habeas relief with respect to his prosecutorial misconduct claim.

/////

/////

---

[9]  "Vouching consists of placing the prestige of the government behind a witness through personal assurances of the witness's veracity, or suggesting that information not presented to the jury supports the witness's testimony."  United States v. Necoechea, 986 F.2d 1273, 1276 (9th Cir. 1993).  "Vouching typically involves the prosecution bolstering the testimony of its own witness."  United States v. Nobari, 574 F.3d 1065, 1078 (9th Cir. 2009.  It is improper for a prosecutor to vouch, in the sense described above, for the credibility of a government witness. United States v. Hermanek, 289 F.3d 1076, 1098 (9th Cir. 2002); see also United States v. Young, 470 U.S. 1, 7 n.3 (1985).  It is also improper for a prosecutor to express his personal opinion of the defendant's guilt.  United States v. Potter, 616 F.2d 384, 392 (9th Cir. 1979).

1    **IV. Conclusion**

2         For all of the reasons set forth above, IT IS HEREBY RECOMMENDED that petitioner's

3    application for a writ of habeas corpus be denied.

4         These findings and recommendations are submitted to the United States District Judge

5    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

6    after being served with these findings and recommendations, any party may file written

7    objections with the court and serve a copy on all parties.  Such a document should be captioned

8    "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

9    shall be served and filed within fourteen days after service of the objections.  Failure to file

10   objections within the specified time may waive the right to appeal the District Court's order.

11   Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir.

12   1991).  In his objections petitioner may address whether a certificate of appealability should issue

13   in the event he files an appeal of the judgment in this case.  See Rule 11, Federal Rules Governing

14   Section 2254 Cases (the district court must issue or deny a certificate of appealability when it

15   enters a final order adverse to the applicant).

16   Dated:  October 16, 2015

17

18                                    _Dale A. Drozd_____

19                                    DALE A. DROZD
                                      UNITED STATES MAGISTRATE JUDGE

20   DAD:8:
     Calderon-silva52.hc

21

22

23

24

25

26

27

28